Good morning, your honors. May it please the court. Sonya Ralston for the United States. The defendants in these cases did not bargain for sentences below the mandatory minimums. They bargained for 5k motions, conditioned on their cooperation, and they got that. The fact that these bargains have become less valuable today than they were 10 years ago is neither unique nor problematic. The district court erred in two fundamental ways in concluding to the contrary. First, the court ignored this court's repeated instructions that the meaning of a plea agreement is to be determined at the time the parties entered into the agreement and not at some later point. A fact that is confirmed by the record here in that both agreements include integration clauses requiring amendments or alterations to be made in writing, signed by the parties, and a fact that the district court itself acknowledged in the record at appendix 68 and 148. The second error is to say that even if the 5k motions became part of the agreements, the district court misinterpreted the meaning of those motions. Those motions at most said that the defendants, the government, recommended a reduction of five levels or 25% up to, but not lower than, the mandatory minimum. This is because, as the Supreme Court recognized in Melendez, a 5k motion and a 3553e motion are separate, independent judgments made in the discretion of the government. The district court further erred in ordering an illegal remedy to its found breach of the plea agreements. As this court held in Symington, a court may not order an illegal remedy even if the court finds that the agreement had been breached. In that case, it involved a mandatory minimum ACCA sentence that was higher than the sentence imposed or agreed to in the plea agreement, which was a maximum of 10 years. This court held that specific performance was not permissible, and that instead the remedy was for the defendant to be able to withdraw his plea. Did the court ask for a five-level reduction for substantial contribution? It did, Your Honor. And how were that to be achieved without abiding the minimum sentence requirement? The 5k motion affects only the advisory guidelines. It does not affect the mandatory minimum. The government declined in its discretion not to move under 3553e for a sentence below the mandatory minimum. I understand, but the question is how do you get a five-level reduction under the posture of this case? Five doesn't sound meaningless. It's a practical matter. That may be, I'm not suggesting that necessarily concludes anything, but it strikes me that at the time, someone was either well or no, simply one thinking about, perhaps the defense counsel, as to what exactly the plea bargain consisted of. But it was not a very compelling reason to render substantial assistance with a difficulty that sometimes attend that for a prisoner. So, at the time of the sentencing, 10 years ago, Mr. Melton's reduction resulted in a 100-month reduction from his advisory guidelines level. The change that today that only results in a one-level reduction has nothing to do with the assistance he provided. It has to do with the fact that the guidelines have been changed such that his guidelines level was lowered by six levels. And that change... So, you're saying at the time that the plea bargain was struck that the five-level reduction had played, could have played, could have been operative. Operative, Your Honor, yes. I understand, but it... Yes, thank you. You've answered my question. So, I just want to back up. As this court said in Bank, in the Sanchez opinion, and as other courts have repeatedly recognized, the fact that the law changes all the time after a plea agreement has been struck doesn't mean that the agreement becomes invalid or has been breached. I mean, often it is the case that evidence that might have been suppressed wouldn't have been suppressed at the time of the agreement, and then the law changes such that now it would be. That doesn't mean that the agreement is invalid. That's the point of taking a contract is to take the bird in the hand instead of the uncertainty about what might happen in the future. The guidelines have only been amended about a dozen times in a retroactive way that applies under Section 1B110 in 30 years. So, the idea that the parties were contemplating or counting on some massive reduction in the guidelines coming into play in the future is, I think, fanciful because it's very rare. Let me ask you something. Though the court sentenced to 120 months, wasn't the government's recommendation actually above that at the time? So, would it be fair to assume that the government thought that there might still be at least some room, although probably not much because I think it was 126 months for Ms. Flores, but there might still be some room if there were a retroactive amendment for a reduction even based on the substantial assistance? That's correct, Your Honor. In Ms. Flores' case, the low-end recommendation that the government made at the time of the original sentence was 126 months. Today, that would be 120 months. And for Mr. Melton, the mid-range level that the government recommended, which was, I think, 151 months, would have gone down to 120 months. So really, the only reason that there's no 3582C effect here is because the district court granted massive downward variances at the original sentencing after the 5K departures, which is, of course, a relic only of the fact that the guidelines are now advisory. So there are a number of things that were unknown at the time the parties entered into the plea agreement. Nobody knew that the guidelines would be amended, that the court would vary, that the defendants would cooperate. How valuable that assistance would be. And as the plea agreements themselves say, they cannot be amended or altered absent a written agreement by the parties, signed by the parties. There is no amendment to these plea agreements. These plea agreements did not incorporate anything that happened after the date that they were signed, and the district court erred in concluding otherwise. Unless the court has further questions, I'll save my remaining time for rebuttal. You may do so. Thank you. Ms. Rodgers. Good morning. May it please the court. I'm arguing for both of the defendants. I'm arguing for both defendants. I'm agreeing with the move by the court to cancel the trial. I'm arguing for both defendants. I'm arguing for both defendants. Our position in both cases is that a district court decision for a threat is of varying assistance to the defendant's reasonable understanding of their plea. In the case of my case, the court's decision was admitted by the element of fact, and court decisions were necessary in order to effectuate the purpose of the element of denial, which is to ensure that cooperating defendants get the benefits from both their cooperation and from the resurrected amount of evidence they're entitled to. I'll tell you what my issue is with this. I understand the appeal of what the judge did here. And why she did it. But Melendez does seem to be a problem. I don't know how you overcome Melendez. It says very clearly, nothing in 3553E suggests that a district court has power to impose a sentence beyond the statutory minimum to reflect a defendant's cooperation when the government has not authorized such a sentence, but has instead moved for a departure only from the applicable guideline range. And here, there's nothing, there's no 3553E that was actually filed. There's no reference to it in the plea agreements. So how do you get around that problem in Melendez? Well, we agree that the court could not have gone below the mandatory minimums unless the government filed the 3553E motion. And so the breach issue is extremely important. It's clear that they, pretty clear they took that off the table. Said it explicitly. Well, the court can order the government to file a 5K motion if the government breaches the plea agreement as a remedy for breach of the plea agreement. There's a case in this circuit called Gonsalves. Well, yes, that's just enforcing the plea agreement. But the difficulty is that the plea agreement is not breached quite clearly. What can it mean when it says other than we're not going to file except in our discretion? On its face, it says basically that whether we, whether you get, whether there's guidelines credit only or minimum sentences is in our choice. And that's basically what it is. We can move for departure. And it's in our discretion whether that will have its operative effect only on the guideline side or also on the statutory side. Well, yes, the government has discretion. But the government exercised its discretion in this case. And in our district, in the Southern District, plea agreements never contain 3553E language. As the government conceded in its brief, 5K, that language, encompasses 3553E. And what happens is when the guideline range is close to the mandatory minimum, then the government orally moves for a 3553E motion at the sentencing proceeding. They didn't do so in this case because the guideline ranges were so high. Melton's guideline range was 235 to 293 months. That would have been an enormous 5K that we just, we never see. And maybe I've seen one or two of those in my entire career because it would have been more than a 50% reduction of a sentence. And so the absence of that 3553E language in the plea agreement is not meaningful, at least in our district. Well, it's meaningful in the sense the government isn't bound to do. Well, I mean, if you wanted this, you could have negotiated for this. I know you didn't foresee it, but it could have been put in the plea agreement. We really can't negotiate for that because this is the standard plea agreement that is used. If it's a contract of adhesion, we don't pay any attention to it. Is that the argument I mean? No, it's just that it's not done that way in our district. I know, but if you're assuming that a plea agreement is a contract, there's a bargain for and entered into, that's how we get to the contract part of it and make it enforceable. Then it was subject to negotiation. Well, plea agreement is sort of a contract. It's actually kind of a contract plus. And what the district court did in this case was construe the language of this plea agreement to avoid the unjust enrichment of the government at the expense of the defendants here. Well, there's a line between construction and rewriting, and the question is whether the district court rewrote it. According to the district court, once the government decided that substantial assistance had been rendered and attached a value to it through the 5K1.1, that became part of the plea agreement. That's the central reasoning of the district court. Where in the world did Judge DuBose get that? I think, and I disagree with the district court, that the language of the plea agreement is unambiguous. The language of the plea agreement is ambiguous. What the court did here is she applied sort of a quasi-contract theory, which is, you know, it's an equitable remedy to avoid unjust enrichment of one of the parties. And that's appropriate in the context of a plea agreement because the entire framework that courts use to construe plea agreements is a quasi-contractual framework. Yeah, but where did she get the idea that once the government said, okay, this is the range that he may face, but we think you ought to reduce it that much but stay above the statutory mandatory minimum. Where did she get the idea that therefore the government had written into the plea agreement that if there's ever a 3553, I mean 3582C, that that same amount has to be factored in? I don't understand where that came from. She got that from 1B1.10C, I believe. She's trying to apply the comparably less reduction exactly as 1B1.10C requires. It said leave all of the guideline application decisions unaffected. And one of them was that the sentence would be above the statutory maximum. Well, I don't think that's as clear on the record. I don't think there's any evidence on the record as to what the government's intent was with respect to a future 3580C, 3582 motion. There's just nothing on the record because I don't think the government is correct about that. This wasn't something that would have been explicitly discussed. The question is just does the plea agreement, which promised the defendants a 5K, if they provided substantial assistance, which they did, and also promised them the opportunity to seek a 3582 motion in the future if the guidelines were amended in a way that benefited them. And so the defendants reasonably understood those two provisions of the plea agreement read together to permit them to benefit both from their cooperation and from a future retroactive guideline amendment. So you would have us read into all plea bargain agreements that if there's a 3582C in the future, the government has to make the same substantial assistance recommendation based on the new guideline range that it made based on the old one. In these two cases? No, I know. And we're asking for a very narrow rule here. We can't adopt a rule that's applicable only to your two clients as much as you might wish it. It's got to be a rule that applies in this situation. There are thousands of plea bargain agreements out there in this circuit, and you would have us read into all of them that if there's a 3582C in the future, in any of these, in the amendment that affects the range, that the government has to move for a proportionate reduction equal to the proportion, the percentage reduction that it moved for before. I think the plea agreements have to be interpreted in accordance with the defendant's reasonable understanding, and therefore you have to look at what was reasonable in these cases. Do your defendants have any understanding that's more or less reasonable than anybody else's? Well, given the practice in our district of not including 3553E language in the plea agreements, given the legal backdrop at the time these pleas were entered, which included the Williams case from the Eighth Circuit, where the United States had taken the position that they could. All that's still there. Well, no, they're arguing that now it's not still there. They're arguing that Williams. I thought there was an agreement to follow the 35 motion in the Williams case. There was, and I agree that the Williams case is factually distinguishable, but it's still persuasive for two reasons. First. Well, 35 says, I believe, that the court has the authority once the motion is filed to go below the statutory minimum. It does. Okay, so that's different. But the Eighth Circuit's reasoning in the case that 3553E contains no temporal restriction in its plain text, and the fact that the government had affirmatively taken the position in that case, which is the only published case on this issue still today, I think informs the district court's interpretation of the defendant's reasonable understanding in this case. Also, the relevant statutes permit what the district court did in this case. Section 3582 permits it because this matter was not extraneous to the revised guidelines. It was, in fact, required by 1B1.10C for the district court to determine if she had the power to go below the mandatory minimum. Also, United States v. Dillon doesn't prohibit this. Dillon dealt with Booker variances, with defendants who had been sentenced under mandatory guidelines, who were trying to be re-sentenced under advisory guidelines, so it's not directly on point. Also, the district court always has jurisdiction to determine whether or not the government has breached the plea agreement. This court has recognized jurisdiction under 2255 and under mandamus, so it was appropriate for the court to consider in the 3582 context whether the government had breached the plea agreement. She has to make that determination when the defendant alleges the government has breached the plea agreement. Well, I suggest to you, Dillon, probably not nearly so helpful to your cause as you suggest. It kind of cuts against you. I read Justice Sotomayor's opinion, in particular, distinguishing between the modification and the original sentencing. They draw that line, and one can debate that or not, but the court emphasized the difference between initial sentencing and sentence modifications. In other words, if you don't come back and do it, you don't get a complete do-over. Because in Dillon, the underlying sentence itself would have been different, and Booker would have been applicable, but they could not penetrate that and get back to reopen the proceedings and pick up that underlying fault. Right. Dillon holds that a 3582 proceeding is not a plenary resentencing, but this court has held that 3582 proceedings are still sentencing for some purposes, truncated sentencing, but nevertheless sentencing. The court held in a case called Phillips, for example, that it was a sentencing for purposes of Rule 35A, and a court does impose a sentence during a 3582 proceeding. So the government's argument that that language imposes a sentence in 3553E, I don't think is meaningful. They impose a sentence in the sense that it's a modification of a sentence, but the whole, all the proceedings that were in place to deal with a change in guidelines contemplate limitations upon the limited reach of those amendments themselves. And that is not, and they rest on the underlying premise that this is not a new resentencing. Right, but this, we're not asking for a plenary resentencing here. Doing what the district court did in this case didn't require bringing the defendant back and conducting a full-blown hearing on 3553A factors, which is what I think Dillon was really about. If I could, I'm almost out of time. If I could end on some factual matters, I'd just like to remind the court that substantial assistance is no small thing for criminal defendants. They put their lives and the lives of their family members at risk every time they cooperate. In this case, for example, Mr. Melton asked me not to mail copies of his appellate briefs to him within the Bureau of Prisons because he knew they would be intercepted and he'd be targeted as a cooperator. Also, I wanted to make sure the court was not under the impression, because Ms. Flores has been deported, that there are no practical consequences from the ruling in this case. Mr. Melton completed his custody sentence four days ago here in Montgomery, and if the district court's ruling doesn't stand in this case, he'll have to return to the Bureau of Prisons, notwithstanding the fact that he now has a job and he's enrolled in school and he's reestablished ties with his family. If there are no more questions. We don't have any more. Thank you. Ms. Ralston. Thank you, Your Honor. I'd like to clarify two minor things and then address some of the more major points. The first is... Right, it's an acceptance appeal waiver. It's not a promise that we're going to work here and protect them. And on to the more major issues. The first is the issue about the verbal abuse. There have been some other cases and it has been the case in the past. It's been used in the past. It's been used to assure that it's not in the context of a verbal abuse, and that it is part of the decision on the government's part. The government does not wish to discount, to file the 3553E motion. It chooses to retain that in its own discretion. And in any event, that's what the Supreme Court said is permissible under Melendez. I'm sorry. Under Melendez, that the government may but need not file the 3553E motion. And in any event, that only applies at the original sentencing. That the 3553E motion can only be filed when the court imposes a sentence, not later during the modification. The second is the concept that this idea about what we're dealing with today wasn't something on the minds of the parties at the time. Fair enough. But as this court said in the Al-Aryan case, when the plea agreement simply makes no mention of something, it is silent on that fact. When a plea agreement is silent, there is no promise. There cannot be a breach of something that a party did not promise to do. And the third is the idea of why it makes sense that no one would think that this would be contemplated by the agreement. That filing a 3553E motion 10 years after the fact would be contemplated. And that's because it's an illegal remedy. Now, counsel cites the Williams case, as did the district court from the 8th Circuit. That case has since been abrogated by the Supreme Court in Dillon in 2010. It's no longer the law in the 8th Circuit. But it was never the law in this circuit. It's based on the idea that 3582C is a resentencing. It's a redo completely. This court rejected that idea in Bravo in 2000, many years before these defendants entered into their plea agreements. And therefore, it never could have been the backdrop to these plea agreements  And that's confirmed by the language of 3553E, impose a sentence, as this court said in Jackson. It's confirmed by the idea, as this court said in Berry, that jurisdiction in 3582C is limited to the revised guideline and not to other things such as the statutory change in the mandatory minimum. And by the text of guidelines 1B110C, which says that the mandatory minimum only doesn't apply in the modification proceeding if the court had the authority to impose a sentence below the mandatory minimum at some prior time, if it already had previously in the past possessed that authority. That use of the past tense is purposeful and should be given effect. If there are no further questions, we ask you to reverse the district court. Thank you. Thank you. Take that case under advisement.